## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

ANTIONNE L. SMITH, # 333-391       \*
             Plaintiff,
        v.             \*   Civil Action Case No. PJM-09-381

WARDEN                \*
          Defendant.
                 \*\*\*

## MEMORANDUM OPINION

Antionne L. Smith filed a state court complaint with the Court while confined at the Baltimore Pre-Release Unit ("BPRU"), claiming that his life is in danger from inmates and officers who are harassing him because of his history with the Federal government and local Baltimore police. He seeks injunctive relief in the form of transfer to a Montgomery County, Maryland detention facility or to home detention.[1] As Plaintiff's allegations raised serious safety concerns, the Court construed the document as a complaint filed pursuant to 42 U.S.C. § 1983 and instructed counsel for the State to file an emergency response. After review of the Complaint and state response, the Court shall deny the request for injunctive relief.

## BACKGROUND

In addition to the aforementioned Complaint, on February 19, 2009, Smith filed a letter with the Court claiming that he continued to be harassed at BPRU and that his urine tests are not sealed in violation of DOC regulations. Paper No. 2. He claimed that he continues to be afraid for his life and has written to state and federal executive and legislative officials. *Id*. Smith claimed that his family is trying to get him on private home detention through a state official and/or judge. *Id*.

On March 11, 2009, Smith filed a court-ordered Supplemental Complaint, alleging that he is not safe in the DOC. Paper No. 4. He questioned the chain of custody of his February 16, 2009

urinalysis test.  *Id*.  Smith accused various BPRU staff of harassment, claimed that he will likely lose his work release job, and alleged that he had been transferred to the Maryland Correctional Adjustment Center ("MCAC").   Smith asks the Court to help him "get to Montgomery County Pre-Release- Work-Release P.R.C. in Rockville, Md."   *Id*.

Smith continued to pepper the Court with letters.   On March 25 & 26, 2009, the Court received his correspondence complaining about his "dirty" urinalysis and his 60 days of lock-up time, which he claimed violated his parole terms and prevented him from being released in June of 2009.  Paper Nos. 6 & 7.  He asked to be moved to private home detention or pre-release and work release facilities in Montgomery or Cecil Counties.  Paper No. 6.  In attachments, Smith appears to contend that he was a key witness in the "Federal Court downtown" involving two men who shot a woman in 1997, and was a witness for the state in another homicide case.   Paper Nos. 6 & 7.  He also claimed that the defendant in the state case is a friend of the head of the Black Gorilla Family ("BGF")  gang, who stabbed Smith's associate.  *Id*.   Smith provides the names of these individuals, but does not indicate whether they are housed at his current place of confinement.[2]  *Id*.  Additional correspondence received on March 30, 2009, also relates to Smith's general concerns regarding his safety while in the DOC.   Paper Nos. 8 & 9.

On April 2, 2009, the Court directed the Office of the Attorney General to file a show cause response to Smith's allegations.  Paper No. 10.  The undersigned noted that while the Court had  no authority to compel prison officials to place Smith in home detention or to transfer him to a non-

---

[1]      The attachments to the Complaint include Smith's correspondence asking for transfer to BPRU.

[2]      Smith presents a running chronology of various problems he had with BPRU administrators and

DOC jail for work-release purposes, it could inquire into Smith's failure-to-protect allegations regarding immediate inmate threats so as to ensure his safety. Paper No. 10.

Since entry of the April 2, 2009 court order, Smith and a family member have filed several additional letters with the Court. Smith indicated that he had been moved to the Jessup Pre-Release Unit ("JPRU") and claimed that a family member of a Defendant against whom he testified is also housed at JPRU and is a gang member of the Bloods. Paper No. 11. He again seeks to be moved out of the DOC and transferred to local detention facilities and home detention. *Id*. Next, Smith wrote the Court claiming that he was moved to MCIH and is being housed on protective custody. Paper No. 13. In recent letters, Smith asks the Court to investigate his urinalysis claims and to intervene concerning his parole. Paper Nos. 16 & 21. He also complains that he is isolated at MCIH and wants to be removed from protective custody.[3]  Paper Nos. 16 & 17.

On May 19, 2009, Defendant filed a show cause response which was re-characterized as a motion for summary judgment. Paper Nos. 20 & 22. Smith has filed opposition responses. Paper Nos. 28-33. It is Defendant's contention that Smith is in no danger as he is currently housed on MCIH administrative segregation and is awaiting transfer to either the Eastern Correctional Institution or Western Correctional Institution for assignment in the protective custody wing. Paper No. 20, Ex. 1.

In his Oppositions Smith questions Defendant's statement that he is in no danger, asking if he spoke personally to gang members. He focuses on his urinalysis testing and the problems he is

---

classification staff. Paper No. 6 at Attachments.

[3]     Smith's wife filed a letter asking that he be allowed to appear before the Court so that his case could be heard. Paper No. 18.

having receiving his bipolar medication.  Smith further reiterates his claims that he "has run into"

inmates connected with federal and state cases, and these "guys have strong tides [sic] in prison and

the streets of Baltimore City."[4]

## DISCUSSION

In order to obtain injunctive relief by way of a temporary restraining order under Fed. R. Civ.

P. 65, Plaintiff must demonstrate: (1) the likelihood he will be irreparably harmed if the preliminary

injunction is denied; (2) the likelihood that Defendants will not be harmed if the requested relief is

granted; (3) the likelihood that Plaintiff will succeed on the merits;[5] and (4) that the public interest

will be served if the injunction is granted.  *See Black welder Furniture Co. v. Selig Manufacturing*

*Co.,* 550 F.2d 189, 195-96 (4th Cir. 1977).  The initial factor to be examined in this analysis is the

"likelihood of irreparable harm to the plaintiff."   Indeed, the failure to make a clear showing of

irreparable harm is, by itself, a ground upon which to deny a preliminary injunction.  *See Direx*

*Israel, Ltd. v. Breakthrough Medical Corporation*, 952 F.2d 802, 812 (4th Cir. 1992).

With the foregoing standard in mind, the Court finds that Smith is not entitled to emergency

injunctive release.  While he has identified inmate enemies at the Jessup Pre-Release Unit and the

Maryland Correctional Adjustment Center, at no point has he named enemies at MCIH or ECI.

Further, the record shows that administrators have and are taking all necessary steps to ensure his

---

[4]      Smith's original Complaint concerns his safety.   In his subsequent letters, however, he takes issue
with an alleged false urinalysis test result, mail tampering, access to psychiatric medication, the denial of
parole, and the placement of an inmate in his protective custody cell at MCIH.   The latter allegation is the
subject of a new civil rights complaint.  *See Smith v. Warden*, Civil Action No. PJM-09-2036 (D. Md.).   The
Court shall only examine those safety issues addressed in the Complaint.  If Smith wishes to seek Court
review of his other claims he may file a new complaint.  The necessary forms shall be provided to him.

[5]      To meet the standard for establishing an Eighth Amendment claim, Smith must project evidence that a
prison official "knows of and disregards an excessive risk to inmate health and safety; the official must both
be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists;
and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *see also Rich v. Bruce*,

safety though investigation and reclassification.   There is no showing that Defendant has been deliberately indifferent to Smith's safety.   Smith was assigned to administrative segregation and transferred to MCIH.   Although he requested removal from protective custody and placement in general population at MCIH, classification personnel decided that he is not an appropriate candidate because his uncle is a MCIH staff member and Smith has not indicated that he is no longer in danger from the prison population.   At present, Smith is housed on MCIH administrative segregation pending his transfer to a protective custody unit.

In sum, the allegations raised here and the dispositive record establish that Smith does not warrant injunctive relief.   Consequently, the Court will grant summary judgment and dismiss the Complaint for injunctive relief.    A separate Order follows.


_____/s/_____
PETER J. MESSITTE
August 13, 2009                    UNITED STATES DISTRICT JUDGE

---

129 F.3d 336, 339-40 (4th Cir. 1997).